949 F.2d 249
 138 L.R.R.M. (BNA) 2761, 120 Lab.Cas. P 11,003,
120 Lab.Cas. P 11,129
 LITTON MICROWAVE COOKING PRODUCTS, DIVISION OF LITTON
SYSTEMS, INC. (predecessor to Microwave Products
of America, Inc.), Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
United Electrical, Radio and Machine Workers of America, Intervenors.
 No. 90-2813.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 15, 1991.
Decided Nov. 12, 1991.
Rehearing and Rehearing En Banc Denied Dec. 23, 1991.
 
 Ralph Kennedy, Beverly Hills, Cal., argued (Francis Dee, on brief), for petitioner.
 Frederick Havard, N.L.R.B., Washington, D.C., argued, for appellee.
 Before FAGG, Circuit Judge, HENLEY, Senior Circuit Judge, and WOLLMAN, Circuit Judge.
 WOLLMAN, Circuit Judge.
 
 
 1
 Litton Microwave Cooking Products, Inc. appeals from the decision and order of the National Labor Relations Board; the Board cross appeals for enforcement of its order. We affirm and order enforcement of the Board's decision.I.
 
 
 2
 Litton Microwave Cooking Products, Inc. (Litton) opened a plant in Sioux Falls, South Dakota, in April of 1977. Shortly thereafter, the employees organized, and the National Labor Relations Board (Board) certified United Electrical, Radio and Machine Workers of America (Union) as the exclusive representative of the employees in the bargaining unit. Litton and the Union began bargaining over an initial contract in October 1980 and completed fifty-three negotiating sessions. Although the parties continued to meet through February 1982, the Board found that they had reached impasse on July 30, 1981.
 
 
 3
 The Union filed charges with the Board, alleging numerous violations of the National Labor-Management Relations Act (NLRMA). An administrative law judge (ALJ) found some violations on the part of Litton, dismissed other allegations, and made a comprehensive order setting out his findings of fact and conclusions of law. The Board adopted portions of the ALJ's findings, rejected other portions, and issued its decision and order. Specifically, the Board found that Litton had committed unfair labor practices prohibited by section 8(a)(5), (3) and (1) of the NLRMA (29 U.S.C. § 158(a)(5), (3) and (1) (1973)).
 
 
 4
 Litton raises three issues in this appeal. It claims that: there is not substantial evidence on the record as a whole to support the finding that Litton had violated section 8(a)(5) and (1) by failing to grant an extra paid one-half hour lunch period before Christmas in 1981; there is not substantial evidence to support the finding that Litton had violated section 8(a)(5) and (1) by failing to grant a February 1981 wage increase; and the six-year period between the filing of all briefs and the issuance of the Board's decision is an inordinate delay warranting denial of enforcement of the Board's order.
 
 II.
 
 5
 An employer must bargain collectively with its represented employees "with respect to wages, hours, and other terms and conditions of employment." 29 U.S.C. § 158(d) (1973 and Supp.1991). It is an unfair labor practice to refuse to bargain collectively. 29 U.S.C. § 158(a)(5). The Board and the courts have long recognized that an employer's unilateral change in conditions of employment under negotiation is an unfair labor practice, "for it is a circumvention of the duty to negotiate which frustrates the objectives of section 8(a)(5) much as does a flat refusal." NLRB v. Katz, 369 U.S. 736, 743, 82 S.Ct. 1107, 1111, 8 L.Ed.2d 230 (1962). Thus, until parties reach impasse in negotiations over labor matters, an employer must "maintain the status quo as to wages and working conditions." Peerless Roofing Co. v. NLRB, 641 F.2d 734, 736 (9th Cir.1981); see also Powell v. National Football League, 930 F.2d 1293, 1300 (8th Cir.1989), cert. denied, --- U.S. ----, 111 S.Ct. 711, 112 L.Ed.2d 700 (1991).
 
 
 6
 We will enforce an order of the National Labor Relations Board if it has correctly applied the law and if substantial evidence in the record supports its findings. Universal Camera Corp. v. NLRB, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951); see also Hall v. NLRB, 941 F.2d 684, 687-88 (8th Cir.1991); NLRB v. American Postal Workers Union, St. Louis, Mo., 618 F.2d 1249, 1254 (8th Cir.1980).
 
 III.
 
 7
 Litton first claims that there is not substantial evidence to support a finding that it violated the NLRMA by not granting an extra paid one-half hour lunch period before Christmas of 1981. Just before Thanksgiving of 1977 and 1978, Litton had given its employees a one hour lunch period rather than the usual one-half hour; the extra one-half hour was paid time. In 1979 and 1980, it did the same just before Christmas. In December 1981, the Union's chief steward asked his immediate supervisor whether Litton intended to discontinue the holiday lunch period. She replied that there would be no extra lunch period. The steward then approached Litton's manager of human resources, who told the steward that he had not considered the matter. Later that day he sent a letter to the steward saying that Litton would allow only the normal lunch period. The two met at the end of the workday to discuss the lunch period, and the manager stated that Litton felt it was an inappropriate time, given the economic conditions, to grant extra paid time to the employees.
 
 
 8
 Despite Litton's claim that it bargained with the Union over this matter, the ALJ found that the supervisor's initial statement to the steward that there would be no holiday lunch demonstrated that Litton had decided to discontinue the practice before the Union ever approached the company. The Board found that the practice of giving an extended holiday lunch period was a condition of employment and adopted the ALJ's finding that Litton had failed to bargain with the Union over its discontinuance.
 
 
 9
 A benefit is a condition of employment when it is "so tied to the remuneration which employees receive[ ] for their work that [it is] in fact a part of it." NLRB v. Wonder State Mfg. Co., 344 F.2d 210, 213 (8th Cir.1965). A gift, however, is not a condition of employment. Id. The Board concluded in this case that because Litton had instituted the extended holiday lunch period during the first year of the plant's operation and had maintained the practice continuously during the next three years, it was a condition of employment rather than a gift. The employees had reasonably anticipated its continuation and immediately approached the company when they heard about its discontinuance.
 
 
 10
 Where either of two inferences may reasonably be drawn from the facts, and the Board finds one of the inferences to be true, we are bound by the Board's finding even if the court would have made a different choice were the matter before us de novo. See Radio Officers Union of Commercial Telegraphers Union v. NLRB, 347 U.S. 17, 49-52, 74 S.Ct. 323, 340-42, 98 L.Ed. 455 (1954); Hall, 941 F.2d at 688; American Postal Workers Union, 618 F.2d at 1254. Although there is evidence to suggest that the extra holiday lunch period was a gift, we cannot say the Board's finding that the practice had become a condition of employment was unreasonable.
 
 
 11
 Additionally, the Board found that Litton had refused to bargain with the Union concerning the holiday lunch period, having already decided to discontinue the practice. Ample evidence in the record supports the Board's finding in this regard.
 
 
 12
 Litton next claims that there is not substantial evidence to support a finding that it violated the NLRMA by not granting a merit increase in February of 1981. From August of 1977 through 1980, Litton had granted wage increases twice a year. It described the increases through the end of 1979 as minimum and maximum merit increases. The minimum increases were given to all covered employees; receiving the maximum increase depended on certain discretionary factors. The February 1980 increase was partially merit increase and partially nonmerit increase. Nonmerit increases were given in August 1980 and 1981, and no increase was given in February 1981.
 
 
 13
 The Board found that the February merit increases were a part of wages because they had become a practice of the company and that Litton never bargained over discontinuance of the increase. Litton counters with three arguments. First, it claims that it never had a policy of February increases and that the February increases were exceptions to the usual policy of once-a-year August increases. Next, Litton maintains that it did bargain with the Union over the February increase. Last, Litton argues that it could not have granted a February merit increase because doing so would have been a unilateral change in wages imposed before reaching impasse.
 
 
 14
 Because employers may not unilaterally change conditions of employment, "[a]n employer with a past history of a merit increase program neither may discontinue that program ... nor ... continue to unilaterally exercise his discretion with respect to such increases." Oneita Knitting Mills, 205 N.L.R.B. 500, ---- n. 1 (1973) (citing Katz, 369 U.S. 736, 82 S.Ct. 1107). Instead, the employer must maintain the general outline of the program and consult the bargaining agent about implementation of the program. Id.
 
 
 15
 Litton had given merit increases in January or February of each year since the plant was opened. It notified employees about the program of increases via the employee handbook and notices posted in the plant. In 1981 it simply discontinued the February increases, maintaining that it had never established a practice of giving the increases. We find substantial evidence in the record to support the Board's position that the February increase was Litton's practice and that Litton never bargained about the 1981 February merit increase.
 
 
 16
 Last, Litton asks this court to deny enforcement of the Board's order because of the inordinate delay between the filing of all the briefs noting exceptions to the ALJ's decision and the Board's issuance of its order. The ALJ issued his decision in 1984, all briefs noting exceptions to the decision were filed soon after, and the Board finally issued its decision and order in 1990.
 
 
 17
 Litton argues that ordering enforcement ten years after the violations took place would serve no useful purpose. We do not hesitate to deny enforcement of dilatory Board orders. See, e.g., NLRB v. Mountain Country Food Store, Inc., 931 F.2d 21, 22-23 (8th Cir.1991) (chiding the Board for its "sloth-like pace" in issuing its order). The Board has a statutory duty to conclude proceedings "within a reasonable time." 5 U.S.C. § 555(b) (1977). It may be compelled to act if its actions are "unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1) (1977).
 
 
 18
 The Board claims, however, and we agree, that the question involved in deciding whether to enforce a delayed order is whether passage of time "has so changed the underlying situation ... that enforcement of the order now not only would undermine more labor policies that (sic) it would advance, but also would mock reality." Emhart Indus., Hartford Div. v. NLRB, 907 F.2d 372, 379-80 (2d Cir.1990).
 
 
 19
 We do not believe that the underlying situation had so changed that it would mock reality to enforce the Board's order. While Litton itself no longer owns the plant, a different division of the parent corporation does. No collective bargaining agreement has ever been reached. We see no reason for the employer to benefit from the Board's delay, inexcusable as it is.
 
 
 20
 Accordingly, we affirm the decision of the Board and order its enforcement.